UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOY RICE, f/k/a JOY CHAPMAN,

        Plaintiff,

v.

PROVIDENCE REGIONAL MEDICAL CENTER EVERETT,

        Defendant.

CASE NO. C09-482 RSM

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

## **I. INTRODUCTION**

This matter comes before the Court on "Defendant's Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction Pursuant to FRCP 12(b)(1) and (6)." (Dkt. #6). Defendant argues that the Court lacks subject matter jurisdiction over a portion of Plaintiff's claims because they are preempted by the National Labor Relations Act. Defendant argues that Plaintiff's remaining claims must be dismissed because Plaintiff has failed to exhaust the grievance procedure contained in the Collective Bargaining Agreement. In her response, Plaintiff concedes that some of her claims are preempted, but argues that her remaining claims survive because the grievance procedure is not mandatory.

For the reasons set forth below, the Court GRANTS IN PART Defendant's motion.

ORDER
PAGE - 1

## II. DISCUSSION

**A. Background**

Plaintiff Joy Rice, formerly known as Joy Chapman, brought the instant lawsuit against Defendant Providence Regional Medical Center Everett on March 4, 2009. Plaintiff–who was employed with Defendant from February 12, 1999 through May 26, 2007 as an Admitting Representative–alleges that that she was subject to unjustified and unlawful disciplinary actions by her immediate supervisor, John Barnings. Plaintiff specifically claims that after Mr. Barnings was hired by Defendant in 2004, Mr. Barnings consistently intimidated her on a daily basis, made negative statements about her Native American heritage, and falsely accused Plaintiff of wrongdoings. (Pl.'s Compl., ¶ 16). As a result of Mr. Barnings' ongoing abusive treatment, Plaintiff contends that she has "suffered severe emotional distress, including depression, anxiety, and physical illness, which she also reported to Defendant[,] and for which she sought significant professional medical treatment and took several ameliorative medications." (*Id.*, ¶ 20). Plaintiff additionally notes that she suffers from ADHD, an impairment that Defendant was or should have been fully aware of due to Plaintiff's written and oral reports to Defendant of this condition. (*Id.*, ¶ 8).

Eventually, Defendant terminated Plaintiff's employment. Todd Fast, a human resources manager with Defendant, informed Plaintiff in writing that:

> [W]e have terminated your employment, effective 5/26/2007, for violations of the Amazing Service Standards that were discussed with you at termination–specifically: 1) insubordinate behavior with your supervisor 2) insufficient call in notification per Union contract and 3) leaving your position vacant during your work shift.

(Dkt. #9, Decl. of Rice, Ex. 3).

Significantly, Plaintiff's employment with Defendant was governed by a Collective Bargaining Agreement ("CBA") entered into between Defendant and Professional Employees International Union Local No. 8, AFL-CIO, Plaintiff's labor union. During Plaintiff's eight-plus years as an employee with Defendant, the original CBA was replaced by a subsequent CBA in December of 2006. (Dkt. #7, Decl. of Fast, ¶ 4). However, neither differs in any material respect. The relevant portions of the CBA provide as follows:

> **Section 6.1** No full-time or part-time employee shall be disciplined or discharged except for just cause. "Just cause" shall be defined to include the concept of a progressive discipline (such as verbal and written reprimands and the possibility of suspension).
>
> \*\*\*
>
> **Section 17.1** The Employer and the Union agree not to discriminate or condone harassment in any manner, in conformance with applicable federal and state laws, against any employee by reason of face, color, religion, creed, sex, national origin, age, marital status, sexual orientation, mental or physical handicap, subject to occupational requirements and ability to perform within those requirements or because of any Union-related activity.
>
> \*\*\*
>
> **Section 18.1** The Employer will maintain a safe and healthful workplace in accordance with state, local and federal safety regulations and laws.
>
> \*\*\*
>
> **Section 18.2** The Employer will address any on-the-job health and safety issues(s) brought forward by employees. The Employer shall fully comply with employment accommodations and all other employee related provisions required by the Americans with Disabilities Act (ADA).

(Decl. of Fast, Ex. 1 at 11, 36; Ex 2 at 62, 87).

The CBA also outlined procedures that a union member had to follow in order to file a grievance or dispute with Defendant. Plaintiff claims that she followed these grievance procedures contained in § 8 of the CBA to no avail.

Plaintiff's complaint, originally filed in Snohomish County Superior Court, alleges six causes of action: (1) breach of the CBA's non-discrimination clause; (2) wrongful/retaliatory discharge in violation of public policy; (3) negligent retention; (4) negligent supervision; (5) negligent infliction of emotional distress; and (6) violation of the American with Disability Act ("ADA), 42 U.S.C. § 12101, *et seq.* (Pl.'s Compl., ¶¶ 23-58). Plaintiff also claims that her *Weingarten* rights were violated, although she does not specifically enumerate this cause of action.[1] Defendant properly removed the case to this Court on April 10, 2009, and brought the instant motion to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6) shortly thereafter.

**B. Standard of Review**

---

[1] Under the National Labor Relations Act, employees under a union contract have the right to request a union representative to be present at an investigatory interview when the employee reasonably believes the interview will result in disciplinary action. The Supreme Court has identified these rights as *Weingarten* rights. *See NLRB v. Weingarten, Inc.*, 420 U.S. 251, 252-53 (1975).

ORDER
PAGE - 3

A motion to dismiss under FRCP 12(b)(1) addresses the court's subject matter jurisdiction. *See id*. The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). When considering a motion to dismiss pursuant to FRCP 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Meanwhile, under FRCP 12(b)(6), a court must dismiss a complaint if a plaintiff can prove no set of facts to support a claim which would entitle him to relief. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The facts must be construed in the light most favorable to the plaintiff, and the court should "accept as true all material allegations in the complaint [and] any reasonable inferences to be drawn from them." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). A complaint need not include detailed allegations, but must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

### C. Plaintiff's Concessions

As an initial matter, the Court notes that Plaintiff did not respond to the majority of Defendant's arguments. These include Defendant's contentions that (1) sections 7 and 8 of the National Labor Relations Act ("NLRA") preempt Plaintiff's wrongful discharge claims and her *Weingarten* claims, and (2) Plaintiff's remaining claims are all covered by the CBA between Defendant and Plaintiff's union, and should therefore be consolidated into one § 301 claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiff's only argument in her eight-page response is that she has exhausted the grievance procedure contained in the CBA at-issue. Thus, Plaintiff claims she has standing to bring a § 301 claim under the LMRA. Plaintiff specifically claims that step 5 in the grievance procedure is permissive rather than mandatory based on a plain-language reading of the CBA.

Plaintiff's failure to respond to these portions of Defendant's brief is an admission that those arguments have merit. *See* Local Rule CR 7(b)(2); *Manning v. Washington*, 463

F.Supp.2d 1229, 1239 (W.D. Wash. 2006). Accordingly, the Court finds that all of Plaintiff's claims are preempted under either the NLRB or the LMRA. Plaintiff's six causes of action are in reality one § 301 claim under the LMRA. Moreover, the only issue for the Court to resolve is whether the step 5, of the 5 step grievance procedure, is permissive or mandatory.

**D. Exhaustion**

Section 301 of the LMRA generally allows an individual employee to bring suit in a district court for violations of contracts between an employer and a labor organization. *See* 29 U.S.C. § 185(a). However, an employee must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *Delcostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 163 (1983) (citations omitted). "Federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). "[U]nless an employee can show that he was not fairly represented by the union, grievance and arbitration is the employee's *exclusive remedy for a breach of the agreement*." *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (emphasis added). Failure to state a claim under § 301 of the LMRA is a defect in subject-matter jurisdiction and requires dismissal under FRCP 12(b)(1) rather than FRCP 12(b)(6). *See Granite Rock Co. v. Int'l Broth. of Teamsters*, 546 F.3d 1169, 1176 n.3 (2008).

Here, and as mentioned previously, § 8 of the CBA indicates that whenever a "grievance" occurs–defined in the CBA as any alleged violation of the terms and conditions of the CBA– the employee must follow a five-step procedure. These steps include: (1) an attempt to resolve the problem with the employee's immediate manager; (2) if step 1 fails, an attempt to resolve the problem with a union representative and a department director; (3) if step 2 fails, an attempt to resolve the matter with a union representative and an administrative director of human resources; (4) if step 3 fails, an optional step to submit an unresolved grievance to mediation; and (5) arbitration. (*See* Decl. of Fast, Ex. 1 at 17-19; Ex. 2 at 68-70).

There is no dispute that Plaintiff has followed steps one through three of the grievance procedure, but has not followed step five. Nevertheless, Plaintiff argues that her lawsuit should not be dismissed because only steps one through three are mandatory, and steps four and five are permissive. In support of this argument, Plaintiff highlights that steps one through three use the words "shall," while steps four and five employ the word "may."

The precise language of step 5 provides as follows:

> If the grievance is not settled on the basis of the foregoing procedures, and if the grievant and the Union have complied with the specific procedures, requirements and time limitations, the Union *may* request in writing to submit the issue to arbitration within ten (10) calendar days following the written reply of the Assistant Administrator of Human Resources.

(*See* Decl. of Fast, Ex. 2 at 69) (emphasis added).[2]

At first blush, the presence of the word "may" supports Plaintiff's position. However, the Supreme Court has stated that in the context of a § 301 claim under the NLRA, "[u]se of the permissive 'may' [in a collective bargaining agreement] *does not itself reveal a clear understanding* between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit." *Maddox*, 379 U.S. at 659-60 (emphasis added). Instead, "[a]ny doubts must be resolved against such an interpretation." *Id.* at 660 (citations omitted). As such, the mere presence of the word "may" does not provide Plaintiff with standing to bring suit under § 301 of the LMRA.

Furthermore, a plain-language review of the CBA reveals that step 5 is not permissive as Plaintiff suggests. The portion of the CBA that precedes the five-step grievance procedure indicates that "a formal grievance *shall* be submitted to the following grievance procedure." (Decl. of Fast, Ex. 2 at 68) (emphasis added). In addition, step 4 of the grievance procedure is expressly titled "Mediation (Optional)" while step 5 is simply titled "Arbitration." (*Id.*, Ex. 2 at

---

[2] As mentioned previously, the original CBA was replaced by a subsequent CBA in December of 2006. In the first CBA, "either party" had the ability to request arbitration (Decl. of Fast, Ex. 1 at 18), whereas the second CBA indicates that only "the Union" has the ability to request arbitration. The Court notes that this difference is immaterial as Plaintiff acknowledges that the second CBA applies.

ORDER
PAGE - 6

69). Indeed, step 4 is the only step of the five-step procedure in the CBA that indicates that the step is optional. If the parties had intended to make step 5 optional, a parenthetical modifying its title would certainly be present as it is in step 4.

As a result, there is no clear directive in the CBA that the Court should defer from the long-standing rule in favor of arbitration. Ultimately, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Plaintiff has not exhausted the grievance procedure contained in the CBA, and Plaintiff's § 301 claim under the LMRA shall be dismissed pursuant to FRCP 12(b)(1).

### E. Dismissal Without Prejudice

Defendant requests dismissal with prejudice of Plaintiff's claims. (Dkt. #10 at 7). However, Defendant fails to explain why the Court should deviate from the general rule that an individual's failure to exhaust her administrative remedies results in dismissal without prejudice. *See O'Guinn v. Lovelock Correctional Ctr.*, 502 F.3d 1056, 1063 (9th Cir. 2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

In addition, it is not lost upon the Court that the time frame in which Plaintiff's union had the ability to bring an arbitration claim on behalf of Plaintiff has elapsed. Thus, dismissing Plaintiff's claims with prejudice would preclude Plaintiff from having any meaningful mode of redress should Defendant reject Plaintiff's arbitration demand as untimely. Plaintiff will have effectively exhausted the grievance procedure contained in the CBA if Defendant rejects her arbitration demand. Under such circumstances, dismissal without prejudice is proper.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) "Defendant's Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction Pursuant to FRCP 12(b)(1) and (6)" (Dkt. #6) is GRANTED IN PART. Plaintiff's claims are dismissed without prejudice, and this case is now CLOSED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 28 day of July, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE